IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CILAG GMBH INTERNATIONAL a Swiss corporation; and JANSSEN BIOTECH, INC., a Pennsylvania corporation,<br><br>                      Plaintiffs,<br><br>   v.<br><br>HOSPIRA WORLDWIDE, LLC, a Delaware corporation f/k/a Hospira Worldwide Inc.; and HOSPIRA, INC., a Delaware corporation,<br><br>                      Defendants. | C.A. No. 22-0589-RGA |

**REPLY BRIEF IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

| | |
|---|---|
| OF COUNSEL:<br><br>David G. Hille<br>Kimberly A. Havlin<br>Jackson Herndon<br>WHITE & CASE<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>dhille@whitecase.com<br>kim.havlin@whitecase.com<br>jackson.herndon@whitecase.com<br><br>Dated: August 22, 2022 | Arthur G. Connolly, III (#2667)<br>Alan R. Silverstein (#5066)<br>CONNOLLY GALLAGHER LLP<br>1201 North Market Street, 20th Floor<br>Wilmington, DE 19801<br>(302) 757-7300<br>aconnolly@connollygallagher.com<br>asilverstein@connollygallagher.com<br><br>*Attorneys for Defendants*<br>*Hospira Worldwide, LLC and Hospira, Inc.* |

# **TABLE OF CONTENTS**

Preliminary Statement ........................................................................................................... 1

Argument ............................................................................................................................... 1

    I.    This Court Should Dismiss Plaintiffs' Contractually Prohibited Claims for Consequential Damages ....................................................................................... 1

    II.    Plaintiff Janssen Biotech's Claims Should Be Dismissed for Lack of Standing ............................................................................................................... 6

        A.    Janssen Biotech Is Not a Party to the DSA ................................................ 6

        B.    Janssen Biotech Is Not an Intended Third-Party Beneficiary of the DSA ............................................................................................................. 7

    III.    Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claims Should Be Dismissed as Duplicative of and Inconsistent with Their Contract Claims ................................................................................................... 9

Conclusion ............................................................................................................................. 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Capital Corp. v. GC-Sun Holdings, Ltd. P'ship*,
   910 A.2d 1020 (Del. Ch. 2006)...................................................................................................5

*Biotronik v. Conor Medsystems*,
   22 N.Y.3d 799 (2007) ...................................................................................................................5

*eCommerce Industries v. MWA Intelligence*,
   2013 Del. Ch. LEXIS 245 (Del. Ch. Sept. 30, 2013).....................................................................4

*Gardensensor, Inc. v. Stanley Black & Decker, Inc.*,
   2014 U.S. Dist. LEXIS 135302 (N.D. Cal. Sept. 24, 2014) ..........................................................5

*In re Adi Liquidation, Inc.*,
   555 B.R. 423 (Bankr. D. Del. 2016) .............................................................................................5

*Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*,
   2022 U.S. Dist. LEXIS 85846 (D. Del. May 12, 2022).................................................................6

*St. Search Ptnrs., L.P. v. Ricon Int'l*,
   2005 Del. Super. LEXIS 246 (Del. Super. Ct. Aug. 1, 2005)..................................................7, 8

*United Health Alliance v. United Med.*,
   2014 Del. Ch. LEXIS 233 (Del. Ch. Nov. 20, 2014).....................................................................9

**PRELIMINARY STATEMENT**

Plaintiffs do not deny that their goal in this lawsuit is to recover lost profits based on Janssen Biotech's "downstream" sales.[1] Nor do they dispute that sales made by Janssen Biotech to third parties are collateral business dealings. As a matter of law, these alleged damages are barred by the DSA's broad prohibition of consequential damages, and Plaintiffs do not raise any argument that controverts the straightforward application of that provision to this dispute. Furthermore, Plaintiffs' argument that Janssen Biotech is a proper plaintiff, based solely on its status as an affiliate of Cilag, does not transform Janssen Biotech into either a party or an intended third-party beneficiary under Delaware law. Plaintiffs' defense of their implied covenant claims also fails. As Plaintiffs admit, they need this claim "to address the consequences of Hospira's breach." But the implied covenant cannot create remedies, especially those at odds with the plain language of the contract. This Court should grant Hospira's motion.

**ARGUMENT**

**I.    THIS COURT SHOULD DISMISS PLAINTIFFS' CONTRACTUALLY PROHIBITED CLAIMS FOR CONSEQUENTIAL DAMAGES**

Plaintiffs repeatedly argue that Hospira's read of the DSA would "deny Plaintiffs a remedy for their damages." (Opp. at 1-2, 7, 14) Not so. On this Motion, Hospira only denies the remedy that Cilag specifically waived: consequential damages like Janssen Biotech's alleged lost profits on downstream sales of ReoPro®. In fact, as Plaintiffs admit, they also seek to recover other alleged losses, such as for loss of the active ingredient, and those claims are not impacted by this Motion. (*See* Opp. at 10 n.4; Compl. at 60, Prayer For Relief)

As Hospira described in its Opening Brief, the DSA contains multiple limitations on both

---

[1] Capitalized terms in this Reply have the same meaning as in Hospira's Opening Brief (D.I. 14, "Br."). Plaintiffs' Brief in Opposition to Hospira's motion (D.I. 16) is referred to as "Opp."

1

parties' liability and includes specific, tailored remedies for manufacturing issues that might arise. (Br. at 4)  Plaintiffs may now be dissatisfied with the remedies available to them under Sections 5.3(c) and (e) of the DSA, but those are the protections the parties bargained for.  The fact that Plaintiffs completely ignore these provisions in their brief—much less dispute their application—is telling.

Plaintiffs instead begin their argument with the inaccurate heading "the parties reserved all remedies under the DSA to compensate for a breach."  (Opp. at 7)  This misstates Section 12.14, which reserves only those remedies not expressly excluded elsewhere in the DSA (as Plaintiffs acknowledge elsewhere).

Plaintiffs' main argument is that Section 8.6's broad ban on consequential damages does not preclude lost profits on downstream ReoPro® sales because the DSA uses the phrase "lost profits" in Section 6.8, the provision that addresses product recalls, but does not separately identify "lost profits" in Section 8.6.  They are wrong.

Section 6.8 addresses which party is responsible for various expenses in the event of a product recall, depending on what caused the recall.  If a recall were caused by Hospira's breach of its express warranties, Hospira must (among other things) reimburse Cilag for certain expenses of the recall; otherwise, it is Cilag who must reimburse Hospira.  In setting out what expenses may be claimed from the other party, Section 6.8 provides that, "[f]or the purposes of this Agreement, the expenses of the recall shall include, but not be limited to, the expenses of notification and destruction or return of the recalled Product, cost of the recalled Product, and any costs associated with the distribution of the replacement Product," while noting that such expenses "shall not include lost profits of either party."  Section 6.8 therefore provides a non-exhaustive list of expenses that are reimbursable in the event of a recall, whether or not those expenses could

arguably be considered "consequential" and thus not recoverable from the other party due to Section 8.6. It nevertheless makes clear that, even in a recall situation, neither party may seek lost profits. There is no tension between Section 6.8 delineating specific categories of reimbursable recall expenses (and excluding lost profits from them) and Section 8.6 precluding consequential damages altogether in all other circumstances. Put differently, the parties were free to stipulate to specific expense categories in the extraordinary event of a product recall, without undoing their broad agreement that consequential damages would not be recoverable by either side.

Plaintiffs try to justify their reading by saying that in the event of a recall due to circumstances "out of the parties' control," a prohibition on lost profits is reasonable because neither party is to blame. (Opp. at 11) However, Section 6.8 prohibits lost profits damages in all circumstances, regardless of fault and even if a recall were due to Hospira's breach of its express warranties under the DSA. Plaintiffs do not address the fundamental problem that their reading exempts Hospira from lost profits liability in the event of a recall—including one caused by Hospira's breaches—but exposes Hospira to lost profits liability if there is no such recall. (*See* Br. at 12) As stated, this makes no sense, and Plaintiffs have no answer.

Regardless, Plaintiffs' Opposition confirms the consequential nature of the damages they seek by admitting that it was Janssen Biotech, not Cilag, that held the "central role" of selling and distributing ReoPro®. (Opp. at 2) As Hospira demonstrated in its Opening Brief, Plaintiffs seek to recover Janssen Biotech's lost profits, which allegedly would occur after Cilag received ReoPro® vials from Hospira and then sent those vials to Janssen Biotech in some intra-company transfer. This renders the damages they seek even more remote from the DSA than if they were seeking Cilag's consequential lost profits (which would also be barred). Plaintiffs do not address

3

this either.[2]

Plaintiffs spend a number of pages arguing that "lost profits *can* be direct damages" under certain limited circumstances. That is true, but there is no disputing that lost profits can also be consequential damages, and the authorities Plaintiffs cite all help explain why the damages they seek here are consequential. (Opp. at 12) For example, Plaintiffs cite *eCommerce Industries v. MWA Intelligence*, where the Court of Chancery explained that "lost profits are considered consequential damages when as a result of the breach, the non-breaching party suffers loss of profits *on collateral business arrangements*." 2013 Del. Ch. LEXIS 245, at *159 (Del. Ch. Sept. 30, 2013) (emphasis added). In that case, a licensor agreed not to compete with the licensee's use of the licensed product. After the licensor breached that non-compete agreement, the court allowed the licensee to seek lost profits damages for profits lost due to the licensor's competing product, reasoning that those profits were precisely "the benefit for which the protected party bargained" in securing the non-compete. *Id.* at *160. Here, by contrast, Plaintiffs did not bargain for any protection of Janssen Biotech's profits, and in fact, expressly waived any ability to seek damages based on "downstream" collateral business arrangements that had nothing to do with Hospira.

Plaintiffs also rely on cases where payments a party was to receive under a contract were expressly tied to profits, such that payments owing directly under the contract were "lost profits." (Opp. at 13-14) For example, Plaintiffs cite *Biotronik*, where the court allowed a plaintiff to pursue lost profits damages because there was an explicit "pricing formula" in the contract that linked the

---

[2] Plaintiffs also misrepresent the facts and overstate their case, arguing that Hospira "refused" to supply ReoPro®. (Opp. at 6) That allegation is nowhere in the Complaint, which alleges only a time-limited halt in production and issues with "four of . . . five fills" in a seven-month period. (Compl. ¶ 43) It is also contradicted by the record on this Motion, since what Hospira actually said in its June 2018 termination notice—which is incorporated by reference into their Complaint and attached to Hospira's motion—is that Hospira "remain[ed] committed to manufactur[ing] and supply[ing]" the drug through the end of 2020. (Br. at 6)

4

parties' profits "directly." 22 N.Y.3d 799, 808 (2007). Plaintiffs also cite *Gardensensor*, where the parties explicitly bargained for shared profits via royalty payments. 2014 U.S. Dist. LEXIS 135302, at *9 (N.D. Cal. Sept. 24, 2014). Here, however, it is undisputed that Cilag paid Hospira a per-vial price that was not tied in any way to Cilag's (much less Janssen Biotech's) future profits. DSA § 5.8.

Plaintiffs try to distinguish *In re Adi Liquidation, Inc.* on the basis that the case cites the Uniform Commercial Code. (Opp. at 13) But Plaintiffs offer no response to the fact that the court in *Adi* dismissed a claim for lost profits damages because there was "no direct relationship" between the defendant's sales to the plaintiff and the plaintiff's subsequent sales to third parties—exactly the situation here.[3] 555 B.R. 423, 433 (Bankr. D. Del. 2016).

Finally, although the parties dispute the correct interpretation of Section 8.6, they agree that it is unambiguous. (*See* Opp. at 3, 20) It therefore can and should be interpreted as a matter of law on this motion to dismiss. Plaintiffs claim that if both interpretations are "reasonable," the lost profits damages claim should proceed (Opp. at 20)—but they offer no reason why, since this unambiguous contract must be interpreted according to what is within its four corners. *See Allied Capital Corp. v. GC-Sun Holdings, Ltd. P'ship*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("[A] motion to dismiss is a proper framework for determining the meaning of contract language. When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning."). And dismissing this portion of Plaintiffs' claims now will significantly reduce the issues in dispute and narrow any discovery that may be required.

---

[3] Plaintiffs ignore the remaining four cases Hospira cited in which courts dismissed claims for lost profits damages based on consequential damages waivers like Section 8.6. (*See* Br. at 9-10)

5

## II. PLAINTIFF JANSSEN BIOTECH'S CLAIMS SHOULD BE DISMISSED FOR LACK OF STANDING

Plaintiffs contend that Janssen Biotech "is either a party to the DSA or, alternatively, an intended third-party beneficiary of the DSA." (Opp. at 15) It is neither.

### A. Janssen Biotech Is Not a Party to the DSA

As a general matter, only a named party to a contract has standing to enforce the contract and sue for breach. *See Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*, 2022 U.S. Dist. LEXIS 85846, at *3 (D. Del. May 12, 2022) (Andrews, J.). It is undisputed that Janssen Biotech is not a named party or signatory to the DSA. Plaintiffs nonetheless argue that Janssen Biotech is a party to the DSA because it is an affiliate of Cilag. That is incorrect. As noted in Hospira's Opening Brief, the word "affiliate" is a defined term in virtually all complex commercial agreements, and it is not synonymous with "party" to a contract. (*See* Br. at 13)

In their Opposition, Plaintiffs respond that Cilag's affiliates have "rights and obligations" under the DSA. (Opp. at 15-16) That is also incorrect. At best, the provisions that Plaintiffs cite recognize that Cilag's affiliates may conduct some business adjacent to the DSA (such as assisting with regulatory filings) or receive ReoPro® downstream from Cilag. *E.g.*, DSA §§ 4.1, 5.1. These acknowledgments, however, do not transform Cilag's affiliates into parties, and Plaintiffs do not cite a single case suggesting that they would.

Plaintiffs also contend that Janssen Biotech is a party because Cilag, under Section 8.1(f) of the DSA, represented that it had "the right to bind its Affiliates to the terms of this Agreement" and because the DSA expressly identifies Janssen Biotech's alleged predecessor as a Cilag affiliate. But a representation that Cilag had the authority to bind Janssen Biotech's predecessor does not make Janssen Biotech or its predecessor a party to the DSA. In addition, immediately following the "right to bind" language, Section 8.1(f) provides that "[Cilag] shall be fully

6

responsible for the acts and omissions of its Affiliates as if such acts and omissions were the acts and omissions of [Cilag]." This is a common representation that assures full performance by Cilag even if it needs to rely on its "Affiliates" to support its performance. The representation is needed precisely because those Affiliates are *not* parties to the DSA. Further, if Plaintiff's argument were correct, it would give Cilag unrestrained, unilateral authority to create parties to the DSA among its scores of "Affiliates" decades after the contract was signed. That cannot be correct.

Plaintiffs also argue that Cilag was acting as an agent of Janssen Biotech's predecessor when it entered the DSA—and that when an agent contracts for a principal, "both agent and principal *may* be parties to the contract" under the Restatement of Agency. (Opp. at 15 (emphasis added)) However, the DSA identifies Cilag plainly and simply as a party—not as an agent—and the contract does not refer to any entity as a principal. The fact that Plaintiffs even try to reach deep into agency concepts is telling. Janssen Biotech is clearly not a party to the DSA.[4]

### B. Janssen Biotech Is Not an Intended Third-Party Beneficiary of the DSA

Under Delaware law, recognition as an intended third-party beneficiary is extraordinarily rare, particularly where sophisticated corporations did not include a party in their agreement and where the contract contains an integration clause. *See, e.g.*, *St. Search Ptnrs., L.P. v. Ricon Int'l*, 2005 Del. Super. LEXIS 246, at *7-9 (Del. Super. Ct. Aug. 1, 2005). Plaintiffs repeatedly insist that the parties had some purpose or understanding to benefit Janssen Biotech—which is exactly what an integration clause prohibits. *See* DSA § 12.6.

Moreover, none of the three factors Delaware law requires for third-party beneficiaries supports Janssen Biotech's bid to join this lawsuit. First, despite Plaintiffs' conclusory allegations,

---

[4] Plaintiffs appear to have abandoned any effort to establish Janssen Biotech's alleged party status based on the QTA, to which they admit Janssen Biotech is not a signatory either. (Opp. at 6)

7

there is no language in the DSA reflecting an intention on behalf of both Cilag and Hospira to benefit Janssen Biotech.  Plaintiffs assert for the first time in their Opposition that Janssen Biotech's predecessor was Centocor, Inc. and point to Section 8.1(f) of the DSA, which notes that "Cenotcor, Inc." is an affiliate of Cilag.[5]  But at best, Plaintiffs' argument confirms that Janssen Biotech's predecessor was an affiliate, a far cry from being a party or an intended third-party beneficiary.  (*See* Br. at 13, 16; *supra* at 6-7)

Plaintiffs' efforts to distinguish Hospira's authorities are also unavailing.  For example, Plaintiffs argue that the third parties in *Micro Focus* and *Eastman* were different than Janssen Biotech because those third parties were not mentioned by name in the underlying contracts.  However, the issue in both cases was whether third parties were intended third-party beneficiaries based on their affiliations with actual parties to the contracts.  The courts said no and held that mere affiliation did not equal intended third-party beneficiary status.

Here, Plaintiffs' argument boils down to Centocor, Inc. being named as an affiliate and the DSA's recognition that Cilag's affiliates may incidentally receive ReoPro® from Cilag.  Cilag and Hospira, as sophisticated parties, could have easily identified Centocor, Inc. as an intended third-party beneficiary, but they did not.  The logic behind *Micro Focus* and *Eastman* is therefore sound and controlling: affiliation with a party is not enough to create third-party beneficiary status.[6]

Second, Plaintiffs cannot establish third-party beneficiary status by claiming that Cilag had an intention to satisfy an alleged pre-existing duty to Janssen Biotech's predecessor to manufacture

---

[5] This assertion contradicts Plaintiffs' allegation that Janssen Biotech's predecessor in 2006 was "Centocor Biotech Inc.," not "Centocor, Inc."  Compl. ¶ 7 n.2.  But as demonstrated, Plaintiffs cannot cure their deficient claims even if they were granted leave to re-plead these allegations.

[6] Plaintiffs do not even address, much less refute, the remaining authorities cited in Hospira's Opening Brief.  (*See* Br. at 15-16)  As those cases instruct, Plaintiffs cannot will into existence an intention to benefit Janssen Biotech where no such intention is found in the DSA.  *See St. Search*, 2005 Del. Super. LEXIS 246, at *8.

8

and supply ReoPro®. Those alleged intentions and pre-existing duties are not mentioned in the DSA, and in any event, creating third-party beneficiary status based on one party's unstated, unilateral intentions—raised only during litigation, years later—defies basic contract law.

Third, there is no benefit under the DSA to Janssen Biotech at all, let alone a material one as required. Plaintiffs seek to avoid this by arguing that Janssen Biotech is a "*key* Affiliate of Cilag" and asserting, for the first time, that "Cilag has long been the company responsible for securing third-party manufacturing services" like the DSA within the Johnson & Johnson corporate family. (Opp. at 18, 4) But this only emphasizes the corporate separateness that Cilag and Hospira carefully respected when entering the DSA. The DSA plainly does not prescribe that Cilag's affiliates have any rights (material or otherwise) in the event of a production disruption.[7]

Finally, Plaintiffs contend that "[b]enefitting Janssen [Biotech] and other Affiliates of Cilag was material to the DSA because without that benefit, the DSA would have been meaningless." (Opp. at 19) To the contrary, Cilag has various rights under the DSA, as well as specific remedies in the event of any quality disruptions. The DSA is not meaningless. This Court should dismiss Janssen Biotech from this case.

### III. PLAINTIFFS' IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS SHOULD BE DISMISSED AS DUPLICATIVE OF AND INCONSISTENT WITH THEIR CONTRACT CLAIMS

Plaintiffs do not, and cannot, dispute the controlling authority holding that claims for breach of the implied covenant of good faith and fair dealing must be dismissed where, as here, the subject matter of the claims is covered by an express agreement. (Br. 17-20) There is no dispute that Plaintiffs' implied covenant claims arise from the same operative facts as their express

---

[7] Plaintiffs' sole citation on this point is *United Health Alliance v. United Med.*, a case that the court expressly held was "distinguishable" from a more typical situation because the parties' "subcontractor" relationships were governed by federal regulations. 2014 Del. Ch. LEXIS 233, at *10 (Del. Ch. Nov. 20, 2014).

contract claims. Indeed, both claims allege that Hospira's conduct led to Janssen Biotech being unable to sell ReoPro® downstream. Hence, Plaintiffs' implied covenant claims, even as framed by Plaintiffs, are governed by the DSA and duplicative of Plaintiffs' express contract claims alleging Cilag's failure to supply. (*See* Br. at 18-19)[8] Plaintiffs' implied covenant claims also fail because their conclusory accusations of "bad faith" lack any supporting facts and thus do not pass muster as a matter of law. (Br. at 19)

Plaintiffs do not refute these points in their Opposition. Instead, they insist that their implied covenant claims are "*necessary* . . . to address the *consequences* of Hospira's breach of its fundamental obligations—that is, the destruction of ReoPro as a viable product." (Opp. at 19 (emphasis added)) However, it is black-letter law that the implied covenant cannot be used to rewrite a contract or delete a limitation of liability. (*See* Br. at 19-20) Moreover, Plaintiffs' attempt to create a contractually-barred remedy, rather than stating that Hospira breached an implied obligation, is fundamentally inconsistent with the purpose and nature of the implied covenant.[9]

In sum, Plaintiffs' implied covenant claims only highlight the core infirmity of their bid to recover lost profits damages: this remedy is not allowed under the DSA, and the implied covenant cannot erase the bargained-for limitations of liability that the parties agreed to in 2006.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint, with prejudice, to the extent it seeks damages for alleged lost profits Plaintiffs claim they would have earned from sales of ReoPro® to third parties, as well as Counts 2, 3, and 4 in their entirety.

---

[8] Plaintiffs do not even attempt to address, much less dispute, the applicability of the six cases Hospira cited in its Opening Brief on point.

[9] Plaintiffs' only response is to try to distinguish one of Hospira's several cases, *REI*, on the basis that that decision involved tax liens. But the principle in *REI* is well settled and broadly applied: courts will not use the implied covenant to rewrite a contract. (*See* Br. at 20)

| | |
|---|---|
| OF COUNSEL: | CONNOLLY GALLAGHER LLP |
| David G. Hille<br>Kimberly A. Havlin<br>Jackson Herndon<br>WHITE & CASE<br>1221 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>dhille@whitecase.com<br>kim.havlin@whitecase.com<br>jackson.herndon@whitecase.com<br><br>Dated: August 22, 2022 | */s/ Alan R. Silverstein*<br>Arthur G. Connolly, III (#2667)<br>Alan R. Silverstein (#5066)<br>1201 North Market Street, 20th Floor<br>Wilmington, DE 19801<br>(302) 757-7300<br>aconnolly@connollygallagher.com<br>asilverstein@connollygallagher.com<br><br>*Attorneys for Defendants*<br>*Hospira Worldwide, LLC and Hospira, Inc.* |